1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

Danny Tabb,

7                                    Plaintiff,

8          v.

9   Naphcare et al ,

                             Defendants.

10

Case No. 2:21-5541-LK-TLF

REPORT AND
RECOMMENDATION

NOTED FOR OCTOBER 20, 2023

11          This matter comes before the Court on two motions to dismiss Plaintiff's second

12   amended complaint: (1) Defendants' Pierce County, Kevin Benton, Patti Jackson-

13   Kidder, and John Doe (collectively, the "County Defendants") motion to dismiss

14   pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 124); and (2) Defendants'

15   Angela Valencia and NaphCare, Inc. (collectively, the "NaphCare Defendants"[1]) motion

16   to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 126).

17          For the reasons set forth below, the Court should GRANT the County

18   Defendants' motion to dismiss pursuant to FRCP 12(b)(6) as to Plaintiff's claims against

19   Defendants John Doe, Kevin Benton, and Chief Patti Jackson. Plaintiff should not be

20   granted leave to amend on the claims that have been dismissed. The Court should

21   DENY Defendant's motion to dismiss against Pierce County.

22

23   [1] Plaintiff identifies other defendants as well, including Nurse Robert Wargacki, Nurse Jamie Simpson,
     and three "Doe" nurses. None of those defendants has been served and are not represented by counsel
24   at this time. Thus, the Court will not address the merits of Plaintiff's claims against the non-represented
     defendants at this time and will instead, conduct a screening of these claims separately.

25

1    Further, the Court should DENY the NaphCare Defendants' motion as to

2    Plaintiff's claims against NaphCare and Nurse Valencia.

3                                    **FACTS**

4    The facts as alleged in the second amended complaint (Dkt. 121) – in relevant

5    part -- are assumed to be true only for the purposes of reviewing this motion. *Cedar*

6    *Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019).

7    Mr. Tabb, who is currently incarcerated at the Monroe Correctional Complex,

8    filed a complaint asserting claims under 42 U.S.C. § 1983, alleging that while he was a

9    pretrial detainee at the Pierce County Jail, the County Defendants acted with deliberate

10   indifference to an injury he sustained to his eye.

11   Specifically, Plaintiff alleges he was transported to Good Samaritan Hospital by

12   an unidentified Pierce County Sheriff officer after a motor vehicle collision on December

13   18, 2020. Dkt. 121 at ¶18-19. Plaintiff was initially treated only for dog bites to his leg;

14   Plaintiff was then transported to the Pierce County Jail, where he informed Defendant

15   John Doe, a booking officer, that he had something in his eye that was causing him

16   pain. Defendant John Doe instructed Plaintiff to report this pain to the booking nurse. *Id.*

17   at ¶20.

18   Plaintiff then informed the booking nurse, Defendant Jane Doe 1, that he had

19   been in a car accident, collided with a tree at 95 miles per hour; he told her of the pain

20   in his eye and that he could not see; but Plaintiff was informed by her that he needed to

21   sign up for sick call. Plaintiff sent a kite the next morning requesting sick call. When

22   Defendant Jane Doe 2 came to Plaintiff's unit to dispense medication and Plaintiff

23   explained his eye pain to her, she allegedly also informed Plaintiff to sign up for sick

24

25

call. Defendant Jane Doe 2 stated that inmates could not declare medical emergencies. *Id.* at ¶¶ 21, 24, 25.

On December 26, 2020, and December 28, 2020, Plaintiff visited with Defendant Ashley Valencia about another injury he sustained. When he informed Ms. Valencia about his eye, she told him that he had to wait for a sick call. On December 29, 2020, and December 30, 2020, Plaintiff complained to Defendant Robert Wargacki and Defendant Simpson about his eye pain and the number of days he had been waiting to be seen by a medical provider. Both individuals instructed Plaintiff to wait for sick call. Dkt. 121 at ¶¶ 27, 28, 29, 30.

It was not until January 2, 2021, when Plaintiff spoke with non-defendant Nurse Abdi and Abdi examined Plaintiff's eye himself; Abdi recommended that Plaintiff should be sent to the hospital for his eye injury. *Id.* at ¶31.

An unknown lieutenant directed an unidentified corrections officer to release Plaintiff from custody. Defendant Deputy Prosecutor Kevin Benton signed a document on January 2, 2021, releasing Plaintiff from custody so that he could undergo surgery. *Id.* at ¶35. Plaintiff had surgery at Harborview Hospital on January 2-3, 2021. *Id.* at ¶¶ 35, 36, 37. Plaintiff asserts that he suffered serious injury and was left with "huge medical bills". *Id.* at ¶47.

With respect to the County Defendants, Plaintiff states that Defendants John Doe and Kevin Benton acted with deliberate indifference to his serious medical needs under the Eighth and Fourteenth Amendment. With respect to Defendants Pierce County, Patti Jackson-Kidder, and NaphCare, Plaintiff claims that they have a policy, practice or custom of not allowing inmates to declare medical emergencies in violation of his Eighth

1  and Fourteenth Amendment rights. Finally, Plaintiff claims that Defendant Valencia

2  acted with deliberate indifference to his serious medical needs under the Eighth and

3  Fourteenth Amendment and committed medical malpractice.

4

5                              **STANDARD OF REVIEW**

6     A.  Motion to Dismiss Under 12(b)(6)

7         A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual

8  allegations accepted as true, fails to "raise a right to relief above the speculative level".

9  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

10
11         To survive a motion to dismiss, a complaint must contain sufficient factual matter,
           accepted as true, to "state a claim to relief that is plausible on its face." A claim
12         has facial plausibility when the plaintiff pleads factual content that allows the
           court to draw the reasonable inference that the defendant is liable for the
13         misconduct alleged. The plausibility standard is not akin to a probability
           requirement, but it asks for more than a sheer possibility that a defendant has
           acted unlawfully.
14
15  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556, 570).  A

16  complaint must contain a "short and plain statement of the claim showing that the

17  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary;

18  the statement need only give the defendant fair notice of what the . . . claim is and the

19  grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal

20  citations omitted). However, the pleading must be more than an "unadorned, the-

21  defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

22         While the Court must accept all the allegations contained in the Complaint as

23  true, the Court does not have to accept a "legal conclusion couched as a factual

24  allegation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by

25

mere conclusory statements, do not suffice." *Id*.; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe the complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

B. <u>42 U.S.C. §1983</u>

42 U.S.C. § 1983 "affords a 'civil remedy' for deprivation of federally protected rights caused by persons acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id*. Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff must set forth the specific factual basis upon which the plaintiff claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1982). Vague and conclusory allegations of officials participating in a civil rights violation are not sufficient to support a claim under Section 1983. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**DISCUSSION**

A. <u>The County Defendants' Motion to Dismiss</u>

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights. "Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) (*citing Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). Even though conditions of confinement claims brought by pretrial detainees arise under the Due Process Clause, the guarantees of the Eighth Amendment "provide a minimum standard of care for determining rights as a pretrial detainee." *Gordon v. County. Of Orange,* 888 F.3d 1118, 1122 (9th Cir. 2018). Nevertheless, because deliberate indifference to health or safety claims by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause, the same objective evidence standard applies to such claims. *Id*. at 1123-24; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

To prevail under that standard, a plaintiff must allege that (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon*, 888 F.3d at 1125. The defendant's conduct with respect to the third element must be objectively unreasonable, i.e., more than negligence and something akin to

1   reckless disregard. *Gordon*, 888 F.3d at 1125; *see also Russell v. Lumitap*, 31 F.4th

2   729, 738–41 (9th Cir. 2022)

3        In addition, a plaintiff must allege that each defendant personally participated in

4   the conduct alleged to have violated due process. *Jones v. Williams*, 297 F.3d 930, 934

5   (9th Cir. 2002).

6              i.      The Second Amended Complaint Fails to State a Claim for
                       Inadequate Medical Care Plaintiff's Claim Against Defendants John
7                      Doe, Kevin Benton, and Chief Patti Jackson-Kidder in Her
                       Individual Capacity
8
9        Here, regarding Plaintiff's eye pain, Plaintiff alleges that Defendant John Doe

10  instructed Plaintiff to inform the booking nurse of his pain. Then, after an unidentified

11  corrections officer was instructed to release Plaintiff from custody, Defendant Kevin

12  Benton signed a document in Court on January 2, 2021, releasing Plaintiff from custody.

13       At most, Plaintiff has alleged that he informed Defendant John Doe of his eye

14  pain and that Defendant John Doe directed Plaintiff to the person, i.e., the booking

15  nurse, that could assist him. With respect to Defendant Benton, Plaintiff simply states

16  that he signed a document to release Plaintiff from custody so that he could undergo

17  surgery. Although Plaintiff's allegations may establish that the Defendants were aware

18  of his eye pain, they are insufficient to establish that the Defendants themselves either

19  caused the problem or had a duty to act yet failed to act to resolve the problem. This is

20  insufficient to establish personal participation under § 1983.

21       Plaintiff further names Chief Patti Jackson-Kidder as a defendant in her individual

22  capacity. He makes no factual allegations against her, however, and only states that

23  she, along with Pierce County, has a policy of not allowing inmates to declare a medical

24  emergency. His conclusory allegation fails to allege any facts that show how Defendant

25

Jackson personally participated in causing the alleged harm and is insufficient to state a claim against her.

Plaintiff's claims against Defendants Benton, John Doe and Chief Patti Jackson-Kidder should be dismissed with prejudice and without leave to amend.

"Dismissal without leave to amend is improper unless it is clear ... that the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)).

This is Plaintiff's third attempt at amending his complaint. Dkt. 9, Dkt. 15, Dkt. 121. In the Court's Reports and Recommendations granting Defendants' motions to dismiss Plaintiff's amended complaint (Dkts. 85, 89, 100), and the Order Adopting the Reports and Recommendations (Dkt. 118), the Court specified, in detail, what Plaintiff would need to plead in order to state a claim under the Fourteenth Amendment. With respect to these three Defendants only, the Court cannot conceive of amendments to the complaint that may cure the deficiencies identified above. Thus, the Court recommends denying Plaintiff the opportunity to amend these claims.

      ii.    The Second Amended Complaint States a Claim for Inadequate Medical Care Against Pierce County

Plaintiff also seeks to impose liability on Pierce County and Chief Patti Jackson-Kidder in her official capacity.

The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Such a suit "is *not* a suit against the official personally, for the real

party in interest is the entity." *Kentucky v. Graham*, 473 U.S. at 166. Thus, for the purposes of Plaintiff's civil rights claim here, the entity that would be the real party of interest in an official capacity suit against Chief Patti Jackson-Kidder is Pierce County.

In order to do state a claim against Pierce County, a plaintiff must allege that (1) the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Further, to state a claim, "[i]t is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference' " to his constitutional rights. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016), *cert. denied sub nom.*, *Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017). The deliberate indifference standard is satisfied where a plaintiff alleges facts available to the municipality's policymakers that "put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Castro*, 833 F.3d at 1076.

Here, Plaintiff alleges he informed the booking nurse, Defendant Jane Doe 1, of the pain in his eye after the accident, but was informed by her that he needed to sign up for sick call. Plaintiff then sent a kite the next morning requesting sick call. When Defendant Jane Doe 2 came to Plaintiff's unit to dispense medication and Plaintiff explained his eye pain to her, she allegedly also informed Plaintiff to sign up for sick call. Defendant Jane Doe 2 stated that inmates cannot declare medical emergencies.

On December 26, 2020, and December 28, 2020, Plaintiff visited with Defendant Ashley Valencia about another injury he sustained during the vehicle collision. When he informed Ms. Valencia about his eye, she told him that he had to wait for a sick call. On December 29, 2020, and December 30, 2020, Plaintiff complained to Defendant Robert Wargacki and Defendant Simpson about his eye pain and the number of days he had been waiting to be seen by a medical provider. Both individuals instructed Plaintiff to wait for sick call.

It was not until January 2, 2021, when Plaintiff spoke with non-defendant Nurse Abdi -- Nurse Abdi examined Plaintiff's eye himself -- that Plaintiff was sent to the hospital for his eye injury.

Plaintiff alleges that the jail has a policy of not allowing inmates to declare medical emergencies and this policy amounted to deliberate indifference to his medical needs. Viewing the facts most favorable to Plaintiff, Plaintiff plausibly alleges that several defendants on different days were acting under the influence of a policy, custom, or practice, implemented by Pierce County and were deliberately ignoring Plaintiff's requests to be seen by a medical professional about the injury to his eye.

B. The NaphCare Defendants' Motion to Dismiss

With respect to Plaintiff's claims against the NaphCare Defendants, Plaintiff asserts that Nurse Valencia acted with deliberate indifference, committed medical malpractice, and exhibited "negligence under the Eighth and Fourteenth Amendment." Plaintiff further claims that Naphcare has a policy, practice or custom of not allowing inmates to declare a medical emergency, which constitutes deliberate indifference. As a result of the allegedly inadequate medical care, Plaintiff claims he sustained a serious injury.

i.   The Second Amended Complaint States a Claim for Inadequate
Medical Care Against Defendant Nurse Valencia

The standard for Plaintiff's claim against the individual NaphCare employee is

different than the standard for the same claim against NaphCare the entity. As

discussed above, a deliberate indifference claim against an individual, a plaintiff must

demonstrate four elements: (1) the defendant made an intentional decision with respect

to the plaintiff's conditions of confinement; (2) those conditions subjected the plaintiff to

a risk of serious harm; (3) the defendant did not take reasonable measures to abate the

risk even though a reasonable official would have taken such measures; and (4) by not

taking those measures, defendants caused plaintiff's injuries. *Gordon v. Cty. of Orange*,

888 F.3d 1118, 1124–25 (9th Cir. 2018). This is an objective analysis and requires more

than mere negligence. *Id.* at 1125.

Here, Plaintiff alleges he saw Nurse Valencia on December 26, 2020, and

December 28, 2020, after he submitted a sick call request for his eye. She informed

him, while treating another injury he sustained, that she could not examine his eye.

Plaintiff must wait to be seen through the sick call process for any other injury.

The complaint sufficiently alleges that Nurse Valencia was aware of Plaintiff's pain

and delay of treatment. Plaintiff seems to allege that Nurse Valencia had the capacity to

take steps to implement necessary care, but instead failed to act, which resulted in

continued suffering. Defendants state that Nurse Valencia is not permitted to diagnose

conditions or prescribe treatments, but even if that is true, those were not the only

options available to Nurse Valencia. Dkt. 126 at 11. Further, at this stage of the case,

the facts as described are alleged in the second amended complaint (Dkt. 121) are

assumed to be true. *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019).

Therefore, as to Defendant Valencia, Plaintiff has plead sufficient facts to plausibly show that she was objectively unreasonable in her assessment and acts and omissions concerning Plaintiff's condition, and that the acts or omissions caused a deprivation of Plaintiff's constitutional rights.

Plaintiff also brings medical malpractice and negligence claims against Nurse Valencia. Federal courts must refrain from exercising their pendent jurisdiction over state law claims when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties...."). Because Plaintiff's state law claims of medical malpractice and negligence depend on the same set of facts as his deliberate indifference claims, the Court should deny Defendants' motion to dismiss those claims at this stage.

    ii.  The Second Amended Complaint States a Claim for Inadequate Medical Care Against Defendant NaphCare

In a deliberate indifference claim against a municipal entity, a plaintiff must demonstrate: (1) that the entity acted under the color of state law and (2) that the entity acted or failed to act according to an official policy or custom and thereby caused the plaintiff's injury. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). If a private entity contracts with a municipality to provide health care, the Court treats the corporation as a municipality under *Monell*. *See Tsao*, 698 F.3d at 1138–39. Importantly, the entity cannot be liable merely because it employed a tortfeasor. *Monell*, 436 U.S. at 692. Rather, there must be some evidence of an official policy or custom that caused the plaintiff's injury. *Tsao*, 698 F.3d at 1139.

Interpreted liberally because the second amended complaint was prepared by a pro se litigant, Plaintiff seems to contend that, by virtue of their employees' inadequate care, which flowed directly from Pierce County and NaphCare's policy, custom, or practice, of not allowing inmates to declare medical emergencies, NaphCare committed Fourteenth amendment violations[2]. *Monell* liability attaches to an employing municipality (or its agent) when there is a "direct causal link" between a municipality's custom, or policy, or practice and a constitutional deprivation. *Sandoval v. County of San Diego*, 985 F.3d 657, 681 (9th Cir. 2021) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). Here the deprivation is a failure to provide adequate medical care, *e.g.*, an omission—not an affirmative act. Affirmative conduct by an employee is not always required to establish *Monell* liability. *See Crowell v. Cowlitz County*, 726 F. App'x 593, 595 (9th Cir. 2018). And while a link between an omission and the policy, custom, or practice is required, the second amended complaint adequately alleges such a link.

## CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's claims against County Defendants John Doe, Kevin Benton and Chief Patti Jackson-Kidder should be DISMISSED with prejudice and without leave to amend. The Court further recommends that Defendants' motions to dismiss Pierce County, Nurse Valencia, and NaphCare, Inc. should be DENIED.

---

[2] Defendants argue that Plaintiff's claim should be dismissed on the grounds that Plaintiff did not reference a written or unwritten policy that exists. However, at this stage, the Plaintiff does not even need to specifically allege a policy. It is enough if the policy may be inferred from the allegations of the complaint. *Shaw v. State of California*, 788 F.2d 600, 610 (9th Cir.1986). *See also Lee v. City of Los Angeles*, 250 F.3d 668, 682–83 (9th Cir.2001) ("a claim of municipal liability ... is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice' ")

1    The parties have **fourteen (14) days** from service of this Report and

2  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b);

3  *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for

4  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above

5  time limit, the Clerk shall set this matter for consideration on October 20, 2023, as noted

6  in the caption.

7    Dated this 29th day of September, 2023.

8

9

10    Theresa L. Fricke
      United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25