UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANNY TABB,<br><br>                Plaintiff,<br>    v.<br><br>NAPHCARE, et al.,<br><br>                Defendants. | CASE NO. 3:21-cv-05541-LK-TLF<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION IN PART |

      This matter comes before the Court on United States Magistrate Judge Theresa L. Fricke's Report and Recommendation ("R&R") regarding two motions to dismiss. Dkt. No. 134. Judge Fricke recommends that the Court grant in part and deny in part the motion to dismiss filed by Defendants Pierce County, Kevin Benton, Patti Jackson-Kidder, and John Doe (collectively, the "County Defendants"). *Id.* at 1. Judge Fricke also recommends that the Court deny the motion to dismiss filed by Defendants NaphCare, Inc. and Angela Valencia (collectively, the "NaphCare Defendants"). *Id.* at 2. The NaphCare Defendants filed objections to the R&R. Dkt. No. 135. Mr. Tabb and the County Defendants did not respond to those objections or file their own objections.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART - 1

Having reviewed the R&R, the objections, the remaining record, and the applicable law, the Court adopts the R&R in part as set forth below.

## I.     BACKGROUND

The Court adopts the recitation of the facts of this case set forth in the R&R, Dkt. No. 134 at 2–4, but briefly recounts some relevant background for context.

In July 2021, Mr. Tabb, who is proceeding pro se and *in forma pauperis*, filed this action under 42 U.S.C. § 1983 alleging that he was denied medical care and reasonable accommodations for his hearing impairment while incarcerated at the Pierce County Jail. Dkt. Nos. 1-1, 9. The Court declined to direct service of the complaint due to deficiencies in his claims, but granted him leave to amend, and he filed an amended complaint. Dkt. Nos. 14–15. The Court then granted Defendants' motions to dismiss the amended complaint and granted Mr. Tabb leave to file a second amended complaint, and Mr. Tabb filed his second amended complaint on August 10, 2023. Dkt. Nos. 118, 121.

**A.     Allegations in the Second Amended Complaint**

Mr. Tabb was in a vehicle collision on December 23, 2020 and "sustained damage from glass to his right eye." Dkt. No. 121 at 6. He was transported to Good Samaritan Hospital where he was "only treated for police K-9 bites to his left leg." *Id.* After he was discharged from the hospital, he was transported to the Pierce County Jail where he told the booking officer, John Doe, that "he had just been in a vehicle collision at 95 mph into a tree," needed to return to the hospital, and "something was in his eye, causing pain, and inability to see." *Id.* at 7. John Doe told Mr. Tabb "to inform the booking nurse" and did not contact the booking nurse or another medical provider on Mr. Tabb's behalf. *Id.*

Mr. Tabb "was then sent to see the booking nurse," identified in the second amended complaint as Jane Doe 1, and he reiterated that he was experiencing eye pain and an inability to

see. *Id.* Jane Doe 1 examined Mr. Tabb's eye and told him to sign up for sick call. *Id.* Mr. Tabb was escorted to the medical unit, but because it was too late in the day to request sick call, he had to wait until the next morning to send "a kite to medical requesting sick call." *Id.* at 8. Soon after he sent the kite, he spotted a nurse—Jane Doe 2—dispensing medication, explained that there was something in his eye and it hurt, and tried to enlist her help. *Id.* Jane Doe 2 instructed Mr. Tabb to sign up for sick call, and when Mr. Tabb responded that "this was a medical emergency," Jane Doe 2 "stated that inmates do not get to declare a medical emergency and told [Mr. Tabb] to return to his cell." *Id.* Mr. Tabb had the same conversation with Jane Doe 2 the following day. *Id.* at 9.

Between December 26 and December 30, 2020, Mr. Tabb visited the jail clinic four times for wound care related to the dog bite. *Id.* Nurses Ashley Valencia, Robert Wargacki, and Jaime Simpson assisted Mr. Tabb with a "bandage change," denied his requests to see a doctor about his eye, and informed him that he had to wait for sick call to have his eye examined. *Id.* at 9–10.

On January 2, 2021, Mr. Tabb saw Nurse Abdi dispensing medication and reported his eye injury and inability to obtain help. *Id.* at 10. Nurse Abdi examined his eye, then told the jail's medical provider that Mr. Tabb "needed to be taken to the hospital immediately." *Id.* Mr. Tabb was transported to Tacoma General Hospital where an emergency room doctor concluded that Mr. Tabb "needed emergency surgery to remove glass from the eye." *Id.* at 11. Mr. Tabb was transported to Harborview Medical Center. *Id.* Mr. Tabb contends that Defendant Kevin Benton, a Pierce County Deputy Prosecuting Attorney, then signed a document "[r]eleasing [Mr. Tabb] from custody due to the serious concerning medical issues," the law enforcement official who was with him at the hospital left, and Mr. Tabb had surgery the same day. *Id.* at 3, 11–12.

Mr. Tabb further contends that when he was released from the hospital at around 2:00 a.m. on January 3, 2021, he "had no other way back to Tacoma and the jail" to recover his personal

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART - 3

property, so he "walk[ed] 29 miles in the dark, in the rain, down the side of southbound I-5 freeway" for nine hours to reach the jail. *Id.* at 12.

Mr. Tabb alleges that Defendants John Doe 1 and nurses Valencia, Wargacki, and Simpson all acted with deliberate indifference to his serious medical needs, "constituting cruel and unusual punishment, medical malpractice, negligence under the Eighth Amendment and Fourteenth Amendment of the United States Constitution." *Id.* at 13. He also contends that Defendants NaphCare, Pierce County, and Ms. Jackson-Kidder in her official capacity as Chief of the Pierce County Sheriff's Department "have a policy, practice or custom [of] not allowing an inmate to declare a medical emergency," which resulted in the violation of his rights. *Id.* He further avers that Mr. Benton "acted with deliberate indifference to [his] serious medical need by releasing [him] from custody prior to surgery to avoid the cost of the full time deputies and cost of surgery[.]" *Id.* Finally, he contends that "each Defendant committed Fourteenth Amendment violations" by providing inadequate medical care, "which flowed directly from Pierce County and NaphCare's policy, custom, or practice of limiting access to appropriate levels of care[.]" *Id.* at 14.

Mr. Tabb asserts that NaphCare contracted with Pierce County to provide medical care at the jail. *Id.* at 2. He contends that NaphCare and its employees—including the Jane Doe nurses, Ms. Valencia, Mr. Wargacki, and Ms. Simpson—"acted under color of state law" during the relevant time. *Id.* at 2–5. Mr. Tabb seeks compensatory damages and a declaratory judgment that Defendants violated his rights. *Id.* at 14.

**B.      The County Defendants' Motion to Dismiss**

The County Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 124. They argue that Mr. Tabb's claims against Chief Jackson-Kidder in her individual capacity should be dismissed because the second amended complaint included no factual allegations against her. *Id.* at 6. They also contend that John Doe's

actions referring Mr. Tabb to the booking nurse do not demonstrate deliberate indifference to medical needs. *Id.* And Mr. Tabb failed to "explain how a Deputy Prosecuting Attorney signing an order for plaintiff's release from custody meets" the deliberate indifference standard. *Id.* The County Defendants further argue that although Mr. Tabb alleges a policy, practice, or custom of indifference, he did not support that assertion with facts. *Id.* Finally, the County Defendants contend that they are entitled to qualified immunity. *Id.* at 6–7.

Judge Fricke recommends that the Court grant the County Defendants' motion to dismiss the individual defendants without leave to amend. Dkt. No. 134 at 8. She notes that Mr. Tabb alleged only that John Doe "directed Plaintiff to the person, i.e., the booking nurse, that could assist him" with his eye pain. *Id.* at 7. Mr. Benton's participation was limited to signing a document to release Mr. Tabb from custody so he could undergo surgery. *Id.* Although John Doe and Mr. Benton were aware of his eye pain, they did not cause the problem or fail to act to resolve it. *Id.* As for Chief Jackson-Kidder, Mr. Tabb did not assert any facts against her or show that she personally participated in causing his alleged harm. *Id.* at 7–8. Therefore, Mr. Tabb failed to state a claim against the individual County Defendants. Judge Fricke recommends denying leave to amend because "[t]his is Plaintiff's third attempt at amending his complaint" and she "cannot conceive of amendments to the complaint that may cure the deficiencies identified" regarding the individual capacity claims. *Id.*

Turning to the claim against Pierce County and Chief Jackson-Kidder in her official capacity, Judge Fricke notes that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). She found that Mr. Tabb plausibly alleged that the jail has a policy of not allowing inmates to declare medical emergencies and several employees were acting under that policy, custom, or practice when they ignored his requests to be seen by a medical professional for eye care. *Id.* at

10. She therefore recommends denying the County Defendants' motion to dismiss Pierce County because Mr. Tabb has stated a claim for inadequate medical care and deliberate indifference against it. *Id.* at 8–10, 13.

C. **The NaphCare Defendants' Motion to Dismiss**

Angela Valencia and Defendant NaphCare also moved to dismiss, arguing that Mr. Tabb failed to state a deliberate indifference claim against them. Dkt. No. 126 at 1, 6–11. They contend that the official capacity suit against Nurse Valencia should be dismissed as duplicative of the suit against NaphCare. *Id.* at 8. They further contend that Mr. Tabb did not identify whether he was pretrial detainee or post-conviction prisoner, a basic pleading failure that dooms his claim. *Id.* at 8–9. They argue that even if he could overcome that deficiency, he did not demonstrate deliberate indifference against Nurse Valencia because she was not authorized to diagnose conditions or prescribe treatments. *Id.* at 11. They further aver that Mr. Tabb did not state a medical negligence claim against Nurse Valencia because he did not allege that she "violated the standard of care applicable to her, nor that any particular action or omission on her part proximately caused Plaintiff injury." *Id.* at 11–12.

In his opposition to the motion, Mr. Tabb clarifies that *Angela* Valencia is "no longer a defendant" and his second amended complaint named *Ashley* Valencia as a defendant. Dkt. No. 130 at 17. In their reply, the NaphCare Defendants note that Mr. Tabb had conceded that he abandoned his claims against Angela Valencia and she "remains a dismissed defendant[.]" Dkt. No. 132 at 1.[1]

Judge Fricke found that Mr. Tabb stated a claim for deliberate indifference against "Nurse Valencia" by pleading "sufficient facts to plausibly show that she was objectively unreasonable in

---

[1] After objections to the R&R were filed, Defendant Ashley Valencia, along with Mr. Wargacki and Ms. Simpson, filed a motion to dismiss. Dkt. No. 151. That motion is pending.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART - 6

her assessment and acts and omissions concerning Plaintiff's condition, and that the acts or omissions caused a deprivation of Plaintiff's constitutional rights." Dkt. No. 134 at 11–12. With respect to the NaphCare Defendants' argument that Nurse Valencia was not permitted to diagnose or treat conditions, Judge Fricke notes that "even if that is true, those were not the only options available to Nurse Valencia." *Id.* at 11. Therefore, she recommends denying the NaphCare Defendants' motion to dismiss Mr. Tabb's deliberate indifference claim against Nurse Valencia. *Id.* at 12. She also recommends denying their motion to dismiss Mr. Tabb's medical malpractice and negligence claims against Nurse Valencia. *Id.*

As for NaphCare, Judge Fricke first observes that a private entity may be treated as a municipality for purposes of *Monell* liability when it contracts with a municipality to provide health care. *Id.* (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012)). Because Mr. Tabb "seems to contend that, by virtue of [NaphCare] employees' inadequate care, which flowed directly from Pierce County and NaphCare's policy, custom, or practice, of not allowing inmates to declare medical emergencies, NaphCare committed Fourteenth amendment violations," Judge Fricke found that he adequately alleged a constitutional deprivation caused by a "failure to provide adequate medical care." *Id.* at 13 ("Here the deprivation is a failure to provide adequate medical care, *e.g.*, an omission—not an affirmative act.").

Finally, Judge Fricke notes that Nurses Wargacki and Simpson and the three Doe nurses have not been served and are not represented by counsel, so she accordingly does "not address the merits of Plaintiff's claims against the non-represented defendants at this time and will instead, conduct a screening of these claims separately." *Id.* at 1 n.1.

Defendants Angela Valencia and NaphCare filed objections disagreeing with the R&R on three points. Dkt. No. 135. First, they argue that the R&R conflated previously dismissed defendant

*Angela* Valencia with new Defendant *Ashley* Valencia. *Id.* at 2. Counsel noted that they "regret[] contributing to any confusion between Angela and Ashley Valencia." Dkt. No. 135 at 3 (emphases omitted). Indeed, although they filed their motion to dismiss on behalf of Angela Valencia, Dkt. No. 126 at 1, the remainder of their motion addresses the allegations against Ashley Valencia, whom they refer to only as "Nurse Valencia," *id.* at 4, 8, 11–12. They argue that despite their mistake, "it is indisputable that Angela Valencia was dismissed and that the Second Amended Complaint purposefully contains no allegations against her. Accordingly, any ruling by the Court . . . should reflect Angela Valencia remaining a terminated party, and that any new claims against Ashley Valencia will be screened." Dkt. No. 135 at 3.

Second, they argue that Mr. Tabb does not specify in his second amended complaint whether he is a pre-trial detainee or a post-conviction prisoner, which is significant because the standards differ for each. *Id.* at 3–4. They contend that the R&R "erroneously supplies" the missing information that Mr. Tabb is a pretrial detainee. *Id.* at 4.

Third, they argue that the R&R's analysis is "incomplete." *Id.* They contend that Mr. Tabb alleged a policy of omission but "policies of omission . . . can be policies or customs that create municipal liability" only "if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." *Id.* (quoting *Tsao*, 698 F.3d at 1145).

## II. DISCUSSION

### A. Standards for Reviewing a Report and Recommendation

This Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which" a party objects. 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (same). The Court "may accept, reject, or modify, in whole

1  or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.
2  § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). However, the Federal Magistrates Act "does not on
3  its face require any review at all . . . of any issue that is not the subject of an objection." *Thomas*
4  *v. Arn*, 474 U.S. 140, 149 (1989); *see Reyna-Tapia*, 328 F.3d at 1121 ("[T]he district judge must
5  review the magistrate judge's findings and recommendations de novo *if objection is made*, but not
6  otherwise." (emphasis in original)).

7  **B.      Standards for Motions to Dismiss**

8  When deciding a motion under the Rule 12(b)(6) standard, a court must assume the truth
9  of the complaint's factual allegations and credit all reasonable inferences arising from those
10 allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as
11 true conclusory allegations that are contradicted by documents referred to in the complaint."
12 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the
13 plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."
14 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the
15 plaintiff pleads factual content that allows the court to draw the reasonable inference that the
16 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
17 Although "detailed factual allegations" are not required, a complaint must include "more than an
18 unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels
19 and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*
20 (quoting *Twombly*, 550 U.S. at 555); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134,
21 1145 (9th Cir. 2021) (conclusory allegations of law and unwarranted inferences will not survive a
22 motion to dismiss).

23 Furthermore, a court "may 'generally consider only allegations contained in the pleadings,
24 exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Manzarek*, 519

1   F.3d at 1030–31 (quoting *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th

2   Cir. 2007)). A court is permitted to take judicial notice of matters of public record outside of the

3   pleadings. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). However, a court

4   does not abuse its discretion under Rule 12(d) when it does not consider matters that would require

5   conversion of a 12(c) motion into one for summary judgment. *See Barnes v. Kris Henry, Inc.*, No.

6   20-17141, 2022 WL 501582, at *1 (9th Cir. Feb. 18, 2022).

**C.     The Court Adopts the R&R Regarding the Individual County Defendants**

The Court adopts the R&R's analysis and conclusions regarding the individual County Defendants. Dkt. No. 134 at 6–10. The parties do not object to that portion of the R&R, and the Court agrees with and adopts it.[2]

Specifically, the second amended complaint does not allege any personal participation by Chief Jackson-Kidder. *See generally* Dkt. No. 121; *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (a plaintiff must show "personal participation in the alleged rights deprivation"). The few facts Mr. Tabb alleges regarding John Doe and Mr. Benton do not show that they put him at risk for serious harm, failed to take reasonable measures to abate such a risk, or caused his eye injury. Dkt. No. 121 at 7, 11–12. He has thus failed to state a Fourteenth Amendment claim against them. *See Jones*, 297 F.3d at 934. Although Mr. Tabb asserts that John Doe breached his duty to contact a medical provider, Dkt. No. 121 at 7, negligence is insufficient to establish a Fourteenth Amendment violation, *see Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) ("[T]he

---

[2] Judge Fricke recommended dismissing Mr. Tabb's claim against Chief Jackson-Kidder in her official capacity because an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and the real party in interest is Pierce County. Dkt. No. 134 at 8–9 (quoting *Graham*, 473 U.S. at 166). Although the R&R did not explicitly address the claims against John Doe and Mr. Benton in their official capacities, Dkt. No. 121 at 3, the same reasoning applies to them, and the Court dismisses the official capacity claims against all three individual County Defendants as redundant. *See, e.g., Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (dismissing official capacity claim as redundant).

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART - 10

plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'"). *See also Broughton v. Cutter Lab'ys*, 622 F.2d 458, 460 (9th Cir. 1980) (explaining that "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support" a Section 1983 claim based on indifference to medical needs).[3]

The Court further agrees with Judge Fricke that Mr. Tabb should not be allowed leave to amend his claims against John Doe, Mr. Benton, or Chief Jackson-Kidder. Dkt. No. 134 at 8. In light of the claims' deficiencies and the individuals' very limited roles, it does not appear that Mr. Tabb's failure to state a claim against these Defendants can be cured by amendment. Mr. Tabb did not file objections to the R&R or suggest any amendments that could state a claim against the individual County Defendants, and the Court has granted him leave to amend twice before. Dkt. Nos. 14, 118; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that leave to amend may be denied due to "repeated failure to cure deficiencies by amendments previously allowed"). Mr. Tabb's claims against the individual County Defendants are dismissed with prejudice and without further leave to amend.

**D.     The Court Adopts the R&R in Part Regarding the NaphCare Defendants and the County**

The NaphCare Defendants sought, and the R&R recommended, dismissal of Mr. Tabb's claims against Angela Valencia, Dkt. No. 126 at 1; Dkt. No. 134 at 1, 11–12, but there are no active claims against her. The Court dismissed Mr. Tabb's first amended complaint, which named Angela Valencia as a Defendant, and granted him leave to file a second amended complaint. Dkt. No. 118 at 5, 21–22. Mr. Tabb's second amended complaint does not name Angela Valencia as a defendant, and she remains dismissed. *See generally* Dkt. No. 121. Newly named Defendant

---

[3] Even if Mr. Tabb had intended to assert a medical negligence claim against the individual County Defendants, they are not "health care provider[s]" subject to such a claim. Wash. Rev. Code § 7.70.040(1).

1  Ashley Valencia has filed a motion to dismiss, Dkt. No. 151, and she and Mr. Tabb deserve an
2  opportunity to be heard on that motion. Accordingly, the Court declines to adopt the portion of the
3  R&R regarding Angela Valencia or "Nurse Valencia," and denies this portion of the NaphCare
4  Defendants' motion to dismiss as moot.

5        The NaphCare Defendants' contention that the R&R erroneously assumed that Mr. Tabb
6  was a pretrial detainee—rather than a post-conviction prisoner—does not fare as well. Although
7  the second amended complaint did not explicitly state his conviction status, Rule 12(b)(6) requires
8  courts to assume the truth of factual allegations and credit all reasonable inferences arising from
9  those allegations. *Sanders*, 504 F.3d at 910. Under that rubric, the Court may—and does—
10 reasonably infer that Mr. Tabb was a pretrial detainee during the relevant time because his
11 allegations relate to Defendants' acts and omissions on the day of his arrest and during the two
12 weeks that followed. Dkt. No. 121 at 6–12.

13       The NaphCare Defendants also contend that the R&R's analysis is "incomplete" and fails
14 to address whether the alleged policy "reflects a deliberate or conscious choice to countenance the
15 possibility of a constitutional violation." Dkt. No. 135 at 4 (quoting *Tsao*, 698 F.3d at 1145). As
16 the NaphCare Defendants note, the law distinguishes between policies of action and policies of
17 inaction. *Tsao*, 698 F.3d at 1143. Policies of action "result in the municipality itself violating
18 someone's constitutional rights or instructing its employees to do so," *id.*, and represent a "'direct
19 path' to municipal liability[.]" *Id.* at 1144 (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175,
20 1185 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d
21 1060, 1076 (9th Cir. 2016) (en banc)). "[A] policy of inaction is based on a government body's
22 'failure to implement procedural safeguards to prevent constitutional violations.'" *Jackson v.
23 Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (quoting *Tsao*, 698 F.3d at 1143). In inaction cases, the
24 plaintiff must show (1) that the policy amounts to deliberate indifference to his constitutional right;

i.e., that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation, and (2) that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy. *Id.*

Here, Mr. Tabb alleges that "adequate medical care was refused to [him]" by the County and NaphCare when, over the course of eight days, he informed numerous County and NaphCare employees that "something was in his right eye and that it hurt and he could not see," and despite knowing there was a medical need, each employee (Jane Doe 1, Jane Doe 2, Ashley Valencia, Robert Wargacki, and Jaime Simpson) denied him access to immediate medical care and instead directed him to wait until sick call. Dkt. No. 121 at 2, 7–10. At least one Defendant informed Mr. Tabb "that the employer's rules say [he] ha[d] to wait until[] sick-call." *Id.* at 10. Other Defendants told him that "inmates do not get to declare a medical emergency[.]" *Id.* at 8; *see also id.* at 9 ("inmates do not decide what a medical emergency is, that only staff make that decision"). He alleges that in doing so, these employees "acted with deliberate indifference to [his] serious medical needs" and "failed to provide adequate medical care." *Id.* at 13. This failure stemmed from the County and NaphCare's "policy, practice, or custom not allowing an inmate to declare a medical emergency" and "policy, custom, or practice of limiting access to appropriate levels of care," and Mr. Tabb "suffered serious injury due to Pierce County and NaphCare's inadequate medical care arising from the policy of withholding care." *Id.* at 13–14.

It seems that Judge Fricke found that Mr. Tabb adequately alleged a policy of action against the County and a policy of inaction against NaphCare. Dkt. No. 134 at 10, 13. This Court finds that Mr. Tabb's claims, when liberally construed, adequately state both a policy of action and a policy of inaction against both Defendants. He adequately alleges that the County and NaphCare had a policy or custom of "not allowing an inmate to declare a medical emergency" and/or "limiting access to appropriate levels of care," and that this policy or custom caused a

1  constitutional violation—a 10-day delay in medical care culminating in emergency surgery on his
2  eye. *Id.* at 11, 13–14. He also alleges that County and NaphCare's policy of inaction was "fail[ure]
3  to provide adequate medical care." *Id.* at 13; *see also id.* at 2. He adequately states that these
4  Defendants were on actual or constructive notice that this failure would likely result in a
5  constitutional violation: he asserts that despite knowing of the "medical need," numerous
6  employees denied him immediate care based on "the policy of withholding care" (e.g., by
7  relegating complaints to sick call), amounting to "deliberate indifference to [his] serious medical
8  needs[.]" *Id.* at 7–9, 13–14. And he asserts that this policy of inaction was the cause of the
9  constitutional violation here: he "suffered serious injury due to Pierce County and NaphCare's
10 inadequate medical care arising from the policy of withholding care." *Id.* at 14; *see also Jackson*,
11 749 F.3d at 763–64. These allegations are sufficiently particular to state a plausible claim of a
12 policy of inaction under *Iqbal*. *See Jackson*, 749 F.3d at 764.

13     Finally, the NaphCare Defendants argue that not allowing inmates to "declare a medical
14 emergency at any time and for whatever reason" "is a necessity of the security concerns and
15 protocols required for the proper and clinically appropriate provision of healthcare in a corrections
16 setting." Dkt. No. 135 at 4. The NaphCare Defendants can make that argument and submit
17 supporting evidence later, but at this stage, the Court must accept Mr. Tabb's version of the facts
18 as true. *Sanders*, 504 F.3d at 910.

### III.  CONCLUSION

20     For the foregoing reasons, the Court ADOPTS IN PART the R&R. Dkt. No. 134. The
21 Court DISMISSES Mr. Tabb's claims against individual Defendants Kevin Benton, John Doe, and
22 Chief Patti Jackson-Kidder without leave to amend. Mr. Tabb's claims against former Defendant
23 Angela Valencia remain dismissed. The Court DENIES Defendants' motions to dismiss Mr.
24 Tabb's claims against Pierce County and NaphCare.

The Clerk is directed to send uncertified copies of this Order to Mr. Tabb at his last known address and to Judge Fricke.

Dated this 1st day of May, 2024.

                                              Lauren King
                                              United States District Judge